## UNITED STATES DISTRICT COURT
## EASTERN DISTRICT OF MICHIGAN
## SOUTHERN DIVISION

JAMARR YORK,                                    CASE NO. 2:21-cv-12526

            *Plaintiff,*                        HON.  DENISE PAGE HOOD
   *v.*                                         DISTRICT JUDGE

KILOLO KIJAKAZI,                                HON. PATRICIA T. MORRIS
ACTING COMMISSIONER OF                          MAGISTRATE JUDGE
SOCIAL SECURITY,

            *Defendant.*
_____/

## MAGISTRATE JUDGE'S REPORT AND RECOMMENDATION ON CROSS MOTIONS FOR SUMMARY JUDGMENT (ECF Nos. 12, 14)

## I.    RECOMMENDATION

Plaintiff Jamarr York challenges the Commissioner of Social Security regarding a final decision denying his claim for Supplemental Security Income ("SSI"). The case was referred to the undersigned for review.  (ECF No. 3); *see* 28 U.S.C. § 636(b)(1)(B) (2012); E.D. Mich. LR 72.1(b)(3).  For the reasons below, I recommend **DENYING** Plaintiff's motion for summary judgment, (ECF No. 12), and **GRANTING** the Commissioner's motion (ECF No. 14).

## II.    REPORT

### A. Introduction and Procedural History

#### 1.  The Prior Application for SSI

Plaintiff applied for SSI benefits on January 27, 2011. (ECF No. 8, PageID.93). On October 14, 2011, Administrative Law Judge ("ALJ"), Craig R. Petersen, determined that Plaintiff was disabled as of the day of the application forward due to the need to be "off task at least 25 percent or more of the workday due to ongoing physical impairments." (*Id*. at PageID.93, 96). Plaintiff's benefits ceased due to his incarceration beginning in July 2016. (*Id*. at PageID.68).

## 2.  The Present Claim for SSI

Following Plaintiff's release from prison, on July 19, 2019, he applied for SSI, alleging disability as of July 9, 2019. (*Id*. at PageID.224). He alleges disability due to chronic back pain, left leg pain from a gunshot wound, hip "issues" resulting from the gunshot wound, arthritis of the left wrist, and hypertension. (*Id*. at PageID.248).

Following the initial denial of the claim, Plaintiff requested a hearing, which was held by telephone due to COVID-19 on August 4, 2020, before ALJ Nicole Quandt. (*Id*. at PageID.63, 138). On August 26, 2020, ALJ Quandt determined that Plaintiff was not disabled. (*Id*. at PageID.45-57). On September 24, 2021, the Appeals Council reviewed the ALJ's decision, noting that the ALJ had failed to consider the possible preclusive effect of the October 14, 2011, finding of disability as required by *Drummond v. Comm'r Soc. Sec.,* 126 F. 3d 837 (6th Cir. 1997) (different determination on a subsequent application for benefits must be supported by "new and additional evidence" or changed circumstances). Applying *Drummond,* the Appeals Council nonetheless concurred with the ALJ's factual findings, noting

that the newer evidence supported the August 2020 non-disability determination. (*Id.* at PageID.30-34).  On October 27, 2021, Plaintiff filed for judicial review of the administrative determination.  (ECF No. 1).

### B. Standard of Review

The Court has jurisdiction to review the Commissioner's final administrative decision pursuant to 42 U.S.C. § 405(g) (2018).  The District Court's review is restricted solely to determining whether the "Commissioner has failed to apply the correct legal standard or has made findings of fact unsupported by substantial evidence in the record."  *Sullivan v. Comm'r of Soc. Sec.*, 595 F. App'x 502, 506 (6th Cir. 2014) (internal quotation marks omitted).  Substantial evidence is "more than a scintilla of evidence but less than a preponderance."  *Rogers v. Comm'r of Soc. Sec.*, 486 F.3d 234, 241 (6th Cir. 2007) (internal quotation marks omitted).   "[T]he threshold for such evidentiary sufficiency is not high. . . . It means - and means only - 'such relevant evidence as a reasonable mind might accept as adequate to support a conclusion.'"  *Biestek v. Berryhill*, 139 S. Ct. 1148, 1154 (2019).

The Court must examine the administrative record as a whole, and may consider any evidence in the record, regardless of whether it has been cited by the ALJ.  *See Walker v. Sec'y of Health & Human Servs.*, 884 F.2d 241, 245 (6th Cir. 1989).  The Court will not "try the case de novo, nor resolve conflicts in the evidence, nor decide questions of credibility."  *Cutlip v. Sec'y of Health & Human Servs.*, 25 F.3d 284, 286 (6th Cir. 1994).  If the Commissioner's decision is supported by

substantial evidence, "it must be affirmed even if the reviewing court would decide the matter differently and even if substantial evidence also supports the opposite conclusion." *Id*. at 286 (internal citations omitted).

### C. Framework for Disability Determinations

Disability benefits are available only to those with a "disability." *Colvin v. Barnhart*, 475 F.3d 727, 730 (6th Cir. 2007).  "Disability" means the inability

> to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than [twelve] months.

42 U.S.C. § 1382c(a)(3)(A) (2012).  The Commissioner's regulations provide that disability is determined through the application of a five-step sequential analysis:

> (i) At the first step, we consider your work activity, if any. If you are doing substantial gainful activity, we will find that you are not disabled.
>
> (ii) At the second step, we consider the medical severity of your impairment(s). If you do not have a severe medically determinable physical or mental impairment that meets the duration requirement . . . or a combination of impairments that is severe and meets the duration requirement, we will find that you are not disabled.
>
> (iii) At the third step, we also consider the medical severity of your impairment(s). If you have an impairment(s) that meets or equals one of our listings in appendix 1 of this subpart and meets the duration requirement, we will find that you are disabled.
>
> (iv) At the fourth step, we consider our assessment of your residual functional capacity and your past relevant work. If you can still do your past relevant work, we will find that you are not disabled.
>
> (v) At the fifth and last step, we consider our assessment of your residual functional capacity and your age, education, and work experience to see if you can make an adjustment to other work. If you

can make an adjustment to other work, we will find that you are not
disabled. If you cannot make an adjustment to other work, we will find
that you are disabled.

20 C.F.R. §§ 404.1520(a)(4), 416.920(a)(4) (2021); *see also Heston v. Comm'r of
Soc. Sec.*, 245 F.3d 528, 534 (6th Cir. 2001). "Through step four, the claimant bears
the burden of proving the existence and severity of limitations caused by [his or] her
impairments and the fact that [he or] she is precluded from performing [his or] her
past relevant work." *Jones v. Comm'r of Soc. Sec.*, 336 F.3d 469, 474 (6th Cir.
2003). The claimant must provide evidence establishing the residual functional
capacity, which "is the most [the claimant] can still do despite [his or her]
limitations," and is measured using "all the relevant evidence in [the] case record."
20 C.F.R. §§ 404.1545(a)(1), 416.945(a)(1) (2021).

The burden transfers to the Commissioner if the analysis reaches the fifth step
without a finding that the claimant is not disabled. *Combs v. Comm'r of Soc. Sec.*,
459 F.3d 640, 643 (6th Cir. 2006). At the fifth step, the Commissioner is required to
show that "other jobs in significant numbers exist in the national economy that [the
claimant] could perform given [his or] her RFC and considering relevant vocational
factors." *Rogers*, 486 F.3d at 241 (citing 20 C.F.R. §§ 416.920(a)(4)(v), (g) (2021)).

### D. The ALJ's Findings

Following the five-step sequential analysis, the ALJ determined that Plaintiff
was not disabled. At step one, the ALJ found that Plaintiff had not engaged in
substantial gainful activity ("SGA") since the alleged onset date of July 9, 2019.

(ECF No. 8, PageID.47).  At step two, the ALJ found the following impairments severe: "degenerative disc disease, degenerative joint disease, hypertension, obesity, depressive disorder, and anxiety disorder." (*Id*.).  She found that Plaintiff experienced "moderate" psychological limitation in understanding remembering or applying information; interacting with others; concentration, persistence, or pace; and adapting and managing himself.  (*Id*. at PageID.48-49).  At step three, she found that none of the impairments met or medically equaled a listed impairment found in 20 C.F.R. Part 404, Subpart P, Appendix 1.  (*Id.* at PageID.47).

The ALJ found that Plaintiff had the Residual Functional Capacity ("RFC") for exertionally sedentary work with the following additional limitations:[1]

> The claimant can climb ramps and stairs occasionally, but never climb ladders, ropes or scaffolds. He can occasionally balance, stoop, kneel, crouch, and crawl. He cannot perform repetitive bending or twisting at the waist. He is limited to simple, routine, and repetitive tasks with few, if any, workplace changes. He can have occasional interaction with

---

[1] Under 20 C.F.R. §§  404.1567(a-d), 416.967(a-e) *sedentary* work is defined as "lifting no more than 10 pounds at a time and occasionally lifting or carrying articles like docket files, ledgers, and small tools; *light* work as "lifting no more than 20 pounds at a time with frequent lifting or carrying of objects weighing up to 10 pounds;" *medium* work as "lifting no more than 50 pounds at a time with frequent lifting or carrying of objects weighing up to 25 pounds;" and exertionally *heavy* work as "involv[ing] lifting no more than 100 pounds at a time with frequent lifting or carrying of objects weighing up to 50 pounds. *Very Heavy* work requires "lifting objects weighing more than 100 pounds at a time with frequent lifting or carrying of objects weighing 50 pounds or more.

coworkers and supervisors, but no interaction with the public. The claimant must use a cane for ambulation.

(*Id*. at PageID.49).

At step four, the ALJ found that Plaintiff had no past relevant work. (*Id*. at PageID.55). At step five, the ALJ cited the VE's testimony in support of his determination that Plaintiff could perform a significant number of jobs in the national economy including the exertionally sedentary, unskilled work as a sorter, administrative support person, and assembler. (*Id*. PageID.56, 82). Accordingly, the ALJ concluded that Plaintiff was not disabled. (*Id*. at PageID.56-57).

### E. Administrative Record

#### 1. The Medical Evidence

December 2005 imaging studies of the pelvis showed bullet fragments adjacent to the right lateral iliac area but were otherwise unremarkable. (*Id*. at PageID.489). An October 2013 CT of the lumbar spine was normal except for minimal disc bulging at L5-S1. (*Id*. at PageID.490). April 2017 imaging studies of the hips were unchanged from the earlier studies. (*Id*. at PageID.494). A July 2017 CT of the cervical spine was normal. (*Id*. at PageID.497). January 2018 Michigan Department of Corrections ("MDOC") intake records state that Plaintiff did not have a history of psychological problems. (*Id*. at PageID.368). Intake records note that while Plaintiff reported "decreased mobility, instability, limping," and weakness, he was observed walking "to block [with his Housing Unit Manager] with "a steady,

even, unfavored [and] moderate gait." (*Id*. at PageID.373).  Plaintiff reported that he could walk five to ten blocks but was unable to walk farther.  (*Id*.).  He "demonstrated active resistance to [hip] abduction" but displayed an otherwise functional range of motion.  (*Id*. at PageID.376).  He exhibited normal balance and gait.  (*Id*. at PageID.376).  He was advised to continue mobility exercises and take ibuprofen.  (*Id*. at PageID.376).  He declined mental health treatment.  (*Id*. at PageID.382).  The following month, Plaintiff's request for a cane and a light duty work detail were denied.  (*Id*. at PageID.400).  Treating records note a normal gait and "no indication for a cane or a light duty detail." (*Id*.).  MDOC records include Plaintiff's May 2018 statement that he was unable to perform any work detail due to medical disability.  (*Id*. at PageID.361).  December 2018 records note a diagnosis of mild muscle strain of the lumbar spine.  (*Id*. at PageID.430).

In July 2019, Plaintiff was fitted with glasses for 20/20 vision after failing an eye exam while attempting to get a driver's license.  (*Id*. at PageID.466, 479). Imaging studies of the lumbar spine from the same month were wholly normal.  (*Id*. at PageID.485).  The following month, Plaintiff sought treatment for back pain.  (*Id*. at PageID.566).   Range of motion studies were found to be "functional" for Plaintiff's age.  (*Id*.).  The same month, Plaintiff was discharged from therapy for "non-adherence," including falling asleep during therapy and making only "minimal effort."  (*Id*. at PageID.571, 581, 584).

On October 2, 2019, Siva Sankaran, M.D., performed a consultative medical exam on behalf of the SSA, noting Plaintiff's report of chronic right hand (non-dominant) pain due to "pound[ing] someone on [the] head" as a teenager and from punching through a wall on another occasion. (*Id*. at PageID.512). He also reported ongoing hip and leg pain and muscle spasms since being shot at the age of 14. (*Id*.). Plaintiff stated that he used a cane "when he goes out walking." (*Id*. at PageID.512). Dr. Sankaran observed weakness and tenderness in the left leg. (*Id*. at PageID.514). She made the following additional observations: During the examination, Plaintiff declined to walk without the cane, bend, or squat. (*Id*.). He exhibited muscle spasms of the lumbar spine. (*Id*.). He declined to "give a full effort to make a grip" but displayed a normal range of wrist motion. (*Id*.). Tinel's and Phalen's signs were negative. (*Id*.). He exhibited normal manipulative abilities. (*Id*. at PageID.514, 516). Dr. Sankaran noted that Plaintiff "would not cooperate" with range of motion studies and requests to bend his knees but was seen descending outdoor steps following the exam "without difficulty" and did not have difficulty "getting into a smaller car by bending over and bending his knees." (*Id*.).

On October 9, 2019, psychologist Nathalie Menendes, Psy.D., performed an exam on behalf of the SSA, noting Plaintiff's report of "a little depression" related to his "situation," low self-esteem, and anxiety. (*Id*. at PageID.521). He denied current substance abuse. (*Id*. at PageID.522). He reported that he was currently on probation, noting charges of driving without a license and carrying a concealed

weapon.  (*Id*.).  He reported that he had a good relationship with his mother and had "a few good friends." (*Id*.).  Dr. Menendes noted good contact with reality but low motivation and that Plaintiff "appear[ed] to depend on his family for his welfare." (*Id*.).  Dr. Menendes noted a logical and organized stream of mental activity and the absence of delusions.  (*Id*. at PageID.522-523).  She noted that Plaintiff was fully oriented.  (*Id*.).  She concluded that Plaintiff could understand "simple and one step instructions and work procedures but will have marked difficulty remembering them"; marked problems concentrating and persisting through a typical [eight-hour] day"; and will have mild difficulty "maintaining socially appropriate behavior." (*Id*. at PageID.524).  She found that Plaintiff could adjust to changes in routine and environment.  (*Id*.).  She found that Plaintiff would be unable to manage his benefit funds.  (*Id*.).

On October 14, 2019, B.D. Choi, M.D., performed a non-examining review of the treating and consultative records, finding that Plaintiff could lift or carry 20 pounds occasionally and 10 frequently; sit, stand, or walk for six hours in an eight-hour workday; and push or pull without limitation.  (*Id*. at PageID.106).  Dr. Choi limited Plaintiff to occasional postural activity.  (*Id*. at PageID.107). Dr. Choi found Plaintiff's allegations of limitation "partially credible." (*Id*. at PageID.105).   The same day, psychologist Edward Czarnecki, Ph.D., reviewed the treating and consultative records, finding that due to anxiety and depression, Plaintiff had mild limitation in the ability to understand, remember, or apply information and in

adapting or managing himself.  (*Id*. at PageID.104).  Dr. Czarnecki found moderate limitation in interacting with others and concentration, persistence, or pace.  (*Id*.).

October 2019 emergency room records note that Plaintiff complained of back pain but was negative for gait problems.  (*Id*. at PageID.545).  A CT of the lumbar spine was unremarkable.  (*Id*. at PageID.556, 598).  November 2019 pain clinic records note that Plaintiff was in no acute distress.  (*Id*. at PageID.540).  He reported that a recent course of physical therapy was "without any benefit." (*Id*. at PageID.541).  He exhibited a normal gait.  (*Id.*).  The exam records note "drug seeking behavior." (*Id.*).

In January 2020 Cortland Seaver, P.A., completed a medical source statement, noting that imaging studies were "normal for age." (*Id*. at PageID.531).  Seaver noted that Plaintiff went to physical therapy for only one or two sessions.  (*Id*.).  Seaver found that Plaintiff would not be off task more than five percent of the day and could tolerate "moderate stress" in the workplace.  (*Id*. at PageID.532).  Seaver found that Plaintiff could walk one block before experiencing pain but could sit for more than two hours at a time.  (*Id*.).  He found that Plaintiff could stand for up to 30 minutes before requiring a break.  (*Id*.).  He found that Plaintiff could stand or walk for about two hours in an eight-hour day but needed to walk for 10 minutes every 10 minutes and needed a job allowing him to sit or stand as needed.  (*Id*. at PageID.533).  Seaver precluded all climbing of ladders but found the ability to perform postural activity on an occasional basis.  (*Id*. at PageID.534).  He found that Plaintiff would be absent

from work about four days each month.  (*Id*.).  An EMG of the lower extremities from the same month showed neuropathy on the left "which now appears functional but continues to show some evidence of denervation." (*Id*. at PageID.560-61).

Treating records from the same month by Anh Pham, Physician Facilitator note Plaintiff's request for "Vicodin or Norco" for chronic pain and leg numbness. (*Id*. at PageID.610).  Pham noted that despite Plaintiff's allegations of pain, he was witnessed in the parking lot with improved mobility, "a faster gait," "no problems walking off the curb," and "no problems getting into [the driver's] seat." (*Id*. at PageID.611, 614).  A March 2020 CT of the abdomen/pelvis showed possible "mild constipation" but was otherwise normal.  (*Id*. at PageID.653).

## 2. Plaintiff's Testimony

Plaintiff offered the following testimony:

He was drowsy due to taking his medication prior to the hearing.  (*Id*. at PageID.69).  He declined the ALJ's offer to both himself and his attorney to postpone the hearing.  (*Id*. at PageID.70).

Plaintiff lived with his mother.  (*Id*. at PageID.71).  He held a driver's license but did not drive on a regular basis due the medication side effect of drowsiness. (*Id*.).  He obtained a GED.  (*Id*.).  He could not work due to chronic pain and last worked in 2000.  (*Id*.).

Plaintiff was unable to stand for extended periods or bend due to pain.  (*Id*. at PageID.72).  He was unable to walk more than eight steps at a time.  (*Id*.).  He relied

on a cane, which had been prescribed by his doctor, to walk. (*Id*. at PageID.72-74). He also used the cane while standing and was could not stand in one position for more than a few moments. (*Id*. at PageID.74, 78). After sitting for three to five minutes, he needed to wiggle his legs to avoid numbness. (*Id*.). He spent most of his waking hours reclining with his feet elevated. (*Id*. at PageID.79).

Plaintiff relied on his mother to grocery shop and perform household chores. (*Id*. at PageID.75). He attended physical therapy and had been told that the chronic pain was something that he was required to "deal with." (*Id*.). He took pain medication daily, and would often "nod off" after taking his medication. (*Id*. at PageID.75-77, 79). His physical limitations and lower extremity numbness were caused by a bullet wound to the hip. (*Id*. at PageID.80).

### 3.  The Vocational Expert's Testimony

The VE testified that Plaintiff did not have past relevant work. (*Id*. at PageID.81). The ALJ then posed the following set of modifiers to the VE, describing a hypothetical individual of Plaintiff's age, education, and (lack of) work history:

> [L]imited to light work with the following additional limitations: Occasionally climb ramps and stairs; occasionally climb ladders, ropes, and scaffolds; occasionally balance, stoop, kneel, crouch, and crawl; limited to simple routine, repetitive tasks with few if any workplace changes; occasional interaction with coworkers and supervisors; no interaction with the public. And this person must use a cane for ambulation.

(*Id*. at PageID.81-82). The VE stated if the same individual were limited to *sedentary* work with a preclusion on the use of ladders, ropes, and scaffolds and

twisting or bending at the waist, the hypothetical individual could perform the unskilled, sedentary work of a sorter, Dictionary of Occupational Titles ("DOT") code 521.687-086 (approximately 25,000 positions in the national economy); administrative support clerk, DOT code 209.587-010 (100,000); and assembler, DOT code 713.687-018 (40,000). (*Id*. at PageID.82-83). The VE testified that the need to be off task 20 percent or more of the workday or need for more than one absence a month would preclude competitive employment. (*Id*. at PageID.83). She stated that her testimony was based on the information found in the DOT and her own "professional experience, training, and research." (*Id*.).

### F.  Governing Law

The ALJ must "consider all evidence" in the record when making a disability decision. 42 U.S.C. § 423(d)(5)(B) (2012). The newly promulgated regulations, applicable to applications for disability benefits filed on or after the effective date of March 27, 2017, such as Plaintiff's application here, distinguish between acceptable medical sources, medical sources and nonmedical sources. An acceptable medical source means a medical source who is a:

(1)  Licensed physician (medical or osteopathic doctor);

(2)  Licensed Psychologist, which includes:

  (i)  A licensed or certified psychologist at the independent practice level; or

  (ii)  A licensed or certified school psychologist, or other licensed or certified individual with another title who performs the same function as a school psychologist in a

school setting, for impairments of intellectual disability, learning disabilities, and borderline intellectual functioning only;

(3) Licensed optometrist for impairments of visual disorders, or measurement of visual acuity and visual fields only, depending on the scope of practice in the State in which the optometrist practices;

(4) Licensed podiatrist for impairments of the foot, or foot and ankle only, depending on whether the State in which the podiatrist practices permits the practice of podiatry on the foot only, or on the foot and ankle;

(5) Qualified speech-language pathologist for speech or language impairments only. For this source, qualified means that the speech-language pathologist must be licensed by the State professional licensing agency, or be fully certified by the State education agency in the State in which he or she practices, or hold a Certificate of Clinical Competence in Speech-Language pathology from the American Speech-Language-Hearing Association;

(6) Licensed audiologist for impairments of hearing loss, auditory processing disorders, and balance disorders within the licensed scope of practice only [];

(7) Licensed Advanced Practice Registered Nurse, or other licensed advanced practice nurse with another title, for impairments within his or her licensed scope of practice []; or

(8) Licensed Physician Assistant for impairments within his or her licensed scope of practice [].

20 C.F.R. §§ 404.1502(a), 416.902(a). (2021).

A medical source is "an individual who is licensed as a healthcare worker by a State and working within the scope of practice permitted under State or Federal law, or an individual who is certified by a State as a speech-language pathologist or a school psychologist and acting within the scope of practice permitted under State

or Federal law." *Id.* §§ 404.1502(d), 416.902(a). In contrast, a nonmedical source means "a source of evidence who is not a medical source." *Id.* §§ 404.1502(e), 416.902. "This includes, but is not limited to: (1) [the claimant]; (2) Educational personnel (for example, school teachers, counselors, early intervention team members, developmental center workers, and daycare center workers); (3) Public and private social welfare agency personnel; and (4) Family members, caregivers, friends, neighbors, employers, and clergy." *Id.*

The SSA "will not defer or give any specific evidentiary weight, including controlling weight, to any medical opinion(s) or prior administrative medical findings, including those from your medical sources." *Id.* §§ 404.1520c(a), 416.920(a). "The most important factors we consider when we evaluate the persuasiveness of medical opinions and prior administrative medical findings are supportability (paragraph (c)(1) of this section) and consistency (paragraph (c)(2) of this section)." *Id.* The SSA will consider several factors when it contemplates "the medical opinion(s) and prior administrative medical findings" in a case. *Id.*

Of these factors, the first is "supportability." This factor considers that "[t]he more relevant the objective medical evidence and supporting explanations presented by a medical source are to support his or her medical opinion(s) or prior administrative medical finding(s), the more persuasive the medical opinion(s) or prior administrative medical finding(s) will be[.]" *Id.* §§ 404.1520c(c)(1), 416.920c(c)(1).

The SSA will also consider the "consistency" of the claim.  This includes the consideration that "[t]he more consistent a medical opinion(s) or prior administrative medical finding(s) is with the evidence from other medical sources and nonmedical sources in the claim, the more persuasive the medical opinion(s) or prior administrative medical finding(s) will be[.]" *Id.* §§ 404.1520c(c)(2), 416.920c(c)(2).

In addition, the SSA will consider the "[r]elationship with claimant[.]" *Id.* §§ 404.1520c(c)(3), 416.920c(c)(3).  This factor will include the analysis of:

(i)     Length of the treatment relationship. The length of time a medical source has treated you may help demonstrate whether the medical source has a longitudinal understanding of your impairment(s);

(ii)    Frequency of examinations. The frequency of your visits with the medical source may help demonstrate whether the medical source has a longitudinal understanding of your impairment(s);

(iii)   Purpose of the treatment relationship. The purpose for treatment you received from the medical source may help demonstrate the level of knowledge the medical source has of your impairment(s);

(iv)    Extent of the treatment relationship. The kinds and extent of examinations and testing the medical source has performed or ordered from specialists or independent laboratories may help demonstrate the level of knowledge the medical source has of your impairment(s);

(v)     Examining relationship. A medical source may have a better understanding of your impairment(s) if he or she examines you than if the medical source only reviews evidence in your folder[.]

*Id.*  The fourth factor of the SSA's analysis is "specialization."  In making this determination, the SSA will consider "[t]he medical opinion or prior administrative

medical finding of a medical source who has received advanced education and training to become a specialist may be more persuasive about medical issues related to his or her area of specialty than the medical opinion or prior administrative medical finding of a medical source who is not a specialist in the relevant area of specialty." *Id.* §§ 404.1520c(c)(4), 416.920c(c)(4).

Finally, the SSA will consider "other factors."  These may include any other factors that "tend to support or contradict a medical opinion or prior administrative medical finding." *Id.* §§ 404.1520c(c)(5), 416.920c(c)(5).  "This includes, but is not limited to, evidence showing a medical source has familiarity with the other evidence in the claim or an understanding of our disability program's policies and evidentiary requirements." *Id.*  Further, when the SSA considers "a medical source's familiarity with the other evidence in a claim, we will also consider whether new evidence we receive after the medical evidence source made his or her medical opinion or prior administrative medical finding makes the medical opinion or prior administrative medical finding more or less persuasive." *Id.*

As to the duty to articulate how persuasive the medical opinions and prior administrative medical findings are considered, the new regulations provide "articulation requirements."  The ALJ will consider "source-level articulation." Pursuant to this requirement, "[b]ecause many claims have voluminous case records containing many types of evidence from different sources, it is not administratively feasible for [the ALJ] to articulate in each determination or decision how [he or she]

considered all of the factors for all of the medical opinions and prior administrative edical findings in [each] case record." *Id.* §§ 404.1520c(b)(1), 416.920c(b)(1). "Instead, when a medical source provides multiple medical opinion(s) or prior administrative finding(s), [the ALJ] will articulate how [he or she] considered the medical opinions or prior administrative findings from that medical source together in a single analysis using the factors listed in paragraphs (c)(1) through (c)(5) of [these sections], as appropriate." *Id.* The regulations reiterate that the ALJ is "not required to articulate how [he or she] considered each medical opinion or prior administrative finding from one medical source individually." *Id.*

The regulations stress that the "factors of supportability (paragraph (c)(1) of these sections) and consistency (paragraph (c)(2) of these sections) are the most important factors we consider when we determine how persuasive we find a medical source's medical opinions or prior administrative medical findings to be." *Id.* §§ 404.1520c(b)(2), 416.920c(b)(2). As such, the SSA "will explain how we considered the supportability and consistency factors for a medical source's medical opinions or prior administrative medical findings in your determination or decision. We may, but are not required to, explain how we considered the factors in paragraphs (c)(3) through (c)(5) of this section, as appropriate, when we articulate how we consider medical opinions and prior administrative medical findings in your case record." *Id.*

When medical opinions or prior administrative findings are "equally

persuasive," "well-supported" and "consistent with the record" "about the same

issue," "but are not exactly the same, [the ALJ] will articulate how [he or she]

considered the other most persuasive factors[] for those medical opinions or prior

administrative medical findings in [the claimant's] determination or decision." *Id.*

§§ 404.1520c(b)(3), 416.920c(b)(3)

The regulations clarify that the SSA is "not required to articulate how we

considered evidence from non-medical sources using the requirements of paragraphs

(a) through (c) of this section." *Id.* §§ 404.1520c(d), 416.920c(d). In addition, the

regulations expressly state that the SSA will not consider "evidence that is inherently

neither valuable nor persuasive" and "will not provide any analysis about how we

considered such evidence in our determination or decision, even under § 404.1520c"

or 416.920c. *Id.* §§ 404.1520b(c), 416.920b(c). The regulations categorize evidence

that is inherently neither valuable nor persuasive as: "[d]ecisions by other

governmental and nongovernmental entities;" "[d]isability examiner findings,"

meaning, "[f]indings made by a State agency disability examiner made at a previous

level of adjudication about a medical issue, vocational issue, or the ultimate issue

about whether you are disabled;" and "[s]tatements on issues reserved to the

Commissioner[;]" these statements include:

(i)     Statements that you are or are not disabled, blind, able to work,
        or able to perform regular or continuing work;

(ii)    Statements about whether or not your impairment(s) meets or
        medically equals any listing in the Listing of Impairments[];

    (iii)    Statements about what your residual functional capacity is using our programmatic terms about the functional exertional levels [] instead of descriptions about your functional abilities and limitations[];

    (iv)    Statements about whether or not your residual functional capacity prevents you from doing past relevant work[];

    (v)    Statements that you do or do not meet the requirements of a medical-vocational rule[]; and

    (vi)    Statements about whether or not your disability continues or ends when we conduct a continuing disability review[.]

*Id.* §§ 404.1520b(c), 416.920b(c).

The regulations also provide that "[b]ecause a decision by any other governmental and nongovernmental entity about whether you are disabled, blind, employable, or entitled to any benefits is based on its rules, it is not binding on us and is not our decision about whether you are disabled or blind under our rules." *Id.* §§ 404.1504, 416.904. Therefore, the Commissioner "will not provide any analysis in our determination or decision about a decision made by any other governmental or nongovernmental entity about whether you are disabled, blind, employable, or entitled to benefits." *Id.* The Commissioner will, however, "consider all of the supporting evidence underlying the other governmental or nongovernmental entity's decision that we receive as evidence in your claim[.]" *Id.*

The regulations clarify that "[o]bjective medical evidence means signs, laboratory findings, or both." *Id.* §§ 404.1502(f), 416.902(f). Signs are defined as "one or more anatomical, physiological, or psychological abnormalities that can be

observed, apart from your statements (symptoms)." *Id.* Further, "[s]igns must be shown by medically acceptable clinical diagnostic techniques. Psychiatric signs are medically demonstrable phenomena that indicate specific psychological abnormalities, e.g., abnormalities of behavior, mood, thought, memory, orientation, development or perception, and must also be shown by observable facts that can be medically described and evaluated." *Id.* §§ 404.1502(g), 416.902(g). Laboratory findings "means one or more anatomical, physiological, or psychological phenomena that can be shown by the use of medically acceptable laboratory diagnostic techniques[,]" and "diagnostic techniques include chemical tests (such as blood tests), electrophysiological studies (such as electrocardiograms and electroencephalograms), medical imaging (such as x-rays), and psychological tests." *Id.*; §§ 404.1502(c), 416.902(c).

The most recent amendments to the regulations also tweaked the manner in which the SSA evaluates symptoms, including pain. "In considering whether you are disabled, we will consider all your symptoms, including pain, and the extent to which your symptoms can reasonably be accepted as consistent with the objective medical evidence and other evidence. We will consider all your statements about your symptoms, such as pain, and any description your medical sources or nonmedical sources may provide about how the symptoms affect your activities of daily living and your ability to work[.]" *Id.* §§ 404.1529(a), 416.929(a).

But the SSA clarified that "however, statements about your pain or other

symptoms will not alone establish that you are disabled. There must be objective medical evidence from an acceptable medical source that shows you have a medical impairment(s) which could reasonably be expected to produce the pain or other symptoms alleged and that, when considered with all of the other evidence (including statements about the intensity and persistence about your pain or other symptoms which may reasonably be accepted as consistent with the medical signs and laboratory findings), would lead to a conclusion that you are disabled." *Id.* §§ 404.1529(a), 416.929(a).

Further, "[i]n evaluating the intensity and persistence of your symptoms, including pain, we will consider all of the available evidence, including your medical history, the medical signs and laboratory findings, and statements about how your symptoms affect you." *Id.* The SSA clarified that it will "then determine the extent to which your alleged functional limitations and restrictions due to pain or other symptoms can reasonably be accepted as consistent with the medical signs and laboratory findings and other evidence to decide how your symptoms affect your ability to work." *Id.*

Finally, the SSA notes that "[b]ecause symptoms sometimes suggest a greater severity of impairment than can be shown by objective medical evidence alone, we will carefully consider any other information you may submit about your symptoms." *Id.* §§ 404.1529(c)(3), 416.929(c). This other information may include "[t]he information that your medical sources or nonmedical sources provide about

your pain or other symptoms (e.g., what may precipitate or aggravate your symptoms, what medications, treatments or other methods you use to alleviate them, and how the symptoms may affect your pattern of daily living)," which "is also an important indicator of the intensity and persistence of your symptoms." *Id.* "Because symptoms, such as pain, are subjective and difficult to quantify, any symptom-related functional limitations and restrictions that your medical sources or nonmedical sources report, which can reasonably be accepted as consistent with the objective medical evidence and other evidence, will be taken into account . . . . We will consider all of the evidence presented, including information about your prior work record, your statements about your symptoms, evidence submitted by your medical sources, and observations by our employees and other persons[.]" *Id.* The regulations establish that "[f]actors relevant to your symptoms, such as pain, which we will consider include []:

> (i)   [D]aily activities;
>
> (ii)  The location, duration, frequency, and intensity of . . . pain;
>
> (iii) Precipitating and aggravating factors;
>
> (iv)  The type, dosage, effectiveness, and side effects of any medication . . . taken to alleviate . . . pain or other symptoms;
>
> (v)   Treatment, other than medication, . . . received for relief of . . . pain;
>
> (vi)  Any measures . . . used to relieve . . . pain.

*Id.*

The new regulations also impose a duty on the claimant: "In order to get benefits, you must follow treatment prescribed by your medical source(s) if this treatment is expected to restore your ability to work." *Id.* §§ 404.1530(a), 416.930(a). Stated differently, "[i]f you do not follow the prescribed treatment without a good reason, we will not find you disabled or, if you are already receiving benefits, we will stop paying you benefits." *Id.* §§ 404.1530(b), 416.930(a). Acceptable (or "good") reasons for failure to follow prescribed treatment include:

(1)   The specific medical treatment is contrary to the established teaching and tenets of your religion;

(2)   The prescribed treatment would be cataract surgery for one eye, when there is an impairment of the other eye resulting in a severe loss of vision and is not subject to improvement through treatment;

(3)   Surgery was previously performed with unsuccessful results and the same surgery is again being recommended for the same impairment;

(4)   The treatment because of its magnitude (e.g. open heart surgery), unusual nature (e.g., organ transplant), or other reason is very risky for you; or

(5)   The treatment involves amputation of an extremity, or major part of an extremity.

*Id.* §§ 404.1530(c), 416.930(c).

### G.  Arguments and Analysis

Plaintiff argues that the RFC crafted by the ALJ fails to include the need for a cane while standing; need for a "sit/stand" option; and limitations caused by the medication side effect of drowsiness. (ECF No. 12, PageID.672-78). In turn, the

Commissioner contends that the ALJ was not required to credit this portion of P.A. Seaver's statement because it was based on Plaintiff's self-reports rather the objective evidence. (ECF No. 14, PageID.690). As to the alleged medication side effects, the Commissioner argues that the clinical evidence and Plaintiff's prior statements constitute substantial evidence supporting the conclusion that he did not experience significant medication side effects. (*Id*. at PageID.698-700).

As discussed above, the RFC allows for only a limited range of sedentary work, including a preclusion on the use of ladders, ropes, or scaffolds; no repetitive bending or twisting at the waist; limited postural activity; and the need for a cane for walking. (ECF No. 8, PageID.49). The ALJ did not include either the need for a cane while standing (in one position) or the option to change between a sitting and standing position on an "as needed" basis.

In crafting the RFC, the ALJ must consider the claimant's alleged physical, mental, and environmental restrictions. SSR 96-8p, 1996 WL 374184, at *5 (July 2, 1996); §§ 404.1545(b-d), 416.945(b-d). "Although a function-by-function analysis is desirable, SSR 96–8p does not require ALJs to produce such a detailed statement in writing." *Delgado v. Commissioner of Soc. Sec.,* 30 F. App'x. 542, 547-548 (6th Cir. 2002) (internal citations omitted). "[T]he ALJ need only articulate how the evidence in the record supports the RFC determination, discuss the claimant's ability to perform sustained work-related activities, and explain the resolution of any inconsistencies in the record." *Id.*

### 1. P.A. Seaver's Findings

Plaintiff argues, in effect, that the failure to include all of his relevant limitations in the hypothetical question (forming the basis of the RFC) undermines the step five finding that he could perform a significant range of sedentary work. Again, while the RFC includes the need for a cane while walking, it is silent as to the need for a cane while standing and the need to alternate between a sitting and standing position at will, although both of these restrictions are included in P.A. Seaver's medical statement.  (ECF No. 8, PageID.533).

It is well-settled that an ALJ must consider whether the claimant requires either the use of a cane for standing and a sit/stand option formulating the RFC.  SSR 96-9p states that in some circumstances, the occupational base may be significantly eroded by the need for a cane while standing. 1996 WL 374185, at *7 (July 2, 1996). Likewise, under SSR 96-9p, where the claimant requires a sit/stand option that "cannot be accommodated by scheduled breaks and a lunch period, the occupational base for a full range of unskilled sedentary work will be eroded." *Id.*  The sit/stand "as needed" option as stated by P.A. Seaver can reflect a significant reduction in available jobs.  "The imposition of a sit/stand at will option requirement allowing the individual to change positions at any time rather than prescribed intervals, is the most restrictive of all the sit/stand limitations." *Ferguson v. Comm'r of Soc. Sec.*, 2013 WL 530868, at *5 (E.D. Mich. January 23, 2013) (*citing* SSR 96-9p at *7).

However, while P.A. Seaver found the need for both a cane for standing and

a sit/stand at will option, the ALJ did not err in declining to include either of these findings in the RFC. *See* (ECF No. 8, PageID.533).  As a threshold matter, Seaver prefaces his opinion by stating that the diagnoses of low back pain, leg weakness, and assessment of Plaintiff's functional limitations were "all subjective," noting that the claims of physical limitation were not borne out by either the x-ray or CT studies. (*Id*. at PageID.531).  Seaver went on to note that the imaging studies showed only "mild" degenerative disc disease and that Plaintiff was "able to walk in parking lot faster than in office" and was able "to get in [driver's] seat" without apparent difficulty.  (*Id*. at PageID.532).  An ALJ is not required credit a medical opinion clearly based on the claimant's subjective and unsupported complaints.  *Reeves v. Comm'r of Soc. Sec.*, 618 F. App'x 267, 276, 2015 WL 4231600 (6th Cir. 2015) (ALJ did not err in adopting only a portion of a medical source opinion where the source's "own report suggested that Reeves's symptoms might be due to "anxiety/malingering of unclear origin.").

Plaintiff's related argument that the ALJ failed to sufficiently articulate his reasons for finding Seaver's statement "unpersuasive" does not provide grounds for remand.  Specifically, Plaintiff takes issue with the ALJ's finding that that the "specific functional limitations" found by Seaver "are generally consistent with the record evidence," arguing that the ALJ was therefore required to adopt all of the work restriction found in Seaver's statement.  (ECF No. 12, PageID.675) citing (ECF No. 8, PageID.53-54).

Contrary to this contention, the ALJ sufficiently articulated his reasons for finding Seaver's statement "not persuasive." First, the ALJ acknowledged Seaver's finding that Plaintiff could sit for six hours and stand/walk for two in an eight-hour workday; was limited to walking for 10 minutes at a time; and was limited to (at most) occasional postural activity.  (ECF No. 8, PageID.53).  While the ALJ did not restate all of Seaver's finding verbatim, she provided an adequate summation of the treating statement.

Second, the ALJ found the opinion unpersuasive on the basis that the statement that Plaintiff would miss four days of work each month stood at odds with rest of the opinion indicating that Plaintiff could perform a limited range of sedentary work on a regular basis.  (*Id*. at PageID.54).  The ALJ's finding that the Seaver's opinion was internally inconsistent is a proper basis for its rejection.  *See Hudson v Comm'r of Soc. Sec.*, No. 16-12999, 2018 WL 1249321, at *8 (E.D. Mich. January 31, 2018), *report and recommendation adopted* No. 16-CV-2999, 2018 WL 1243693 (E.D. Mich. March 9, 2018) (ALJ not required to credit medical opinion containing internal inconsistencies). Third, the ALJ also found that the opinion was unpersuasive because it "has no support from the record" as a whole. (*Id*.).  She accurately noted that Seaver "explicitly stated that the aforementioned limitations [contained in his opinion] were largely based on Plaintiff's own subjective complaints." (*Id*.).  She noted that Plaintiff presented "at multiple appointments during the relevant period," showing "generally intact neurological musculoskeletal

functioning." (*Id*.).  The ALJ assessed both the supportability and consistency of the opinion consistent with the requirements of 20 C.F.R. §§ 404.1520c(c)(1-2), 416.920c(c)(1-2).

Aside from the discussion of Seaver's opinion, the ALJ provided a fulsome discussion of the medical evidence supporting the RFC and her rationale for declining to find a greater degree of limitation.  She cited the consultative report showing that Plaintiff demonstrated a limp during the exam but was observed walking normally after leaving the building.  (ECF No. 8, PageID.51).  She noted that contrary to Plaintiff's claim that he was wholly unable to bend, he was seen "bending over and bending his knees" getting into "a smaller car." (*Id*.).  She cited December 2019 treatment records stating that while Plaintiff brought a cane to the appointment, he demonstrated a normal gait.  (*Id*. at PageID.52).  The ALJ noted the treating and consultative records showing intact motor strength in all extremities. (*Id*.).  She noted that the non-examining findings that Plaintiff could actually perform greater than sedentary work were "generally persuasive" but found that due to hypertension, obesity, and evidence of periodic lower extremity weakness, an RFC for a limited range of sedentary work was appropriate.  (*Id*. at PageID.53).  It is well settled that an ALJ is permitted to draw from the record as a whole in crafting the RFC.  *Rudd v. Comm'r of Soc. Sec.*, 531 F. App'x 719, 727-728 (6th Cir.  2013) (rejecting contention ALJ was "bound" by one medical opinion - ALJ "properly based her RFC determination on all the evidence of record"); SSR 96-8p at *2.

## 2.  The Medication Side Effect of Drowsiness

Plaintiff also argues that the ALJ erred by failing to evaluate his allegations of medication side effects.  (*Id*. at PageID.677) citing § 416.929(c)(3).  He cites his own hearing testimony that his medication caused drowsiness and physical therapy records showing that he fell asleep while performing exercises.  (ECF No. 12, PageID.676).

Plaintiff's argument is not well taken.  The ALJ acknowledged Plaintiff's testimony that he experienced "mental fatigue and drowsiness" due to "pain medication side effects." (ECF No. 8, PageID.50).  She observed that on occasion, Plaintiff took Norco.  (*Id*. at PageID.51).  However, the ALJ noted that Plaintiff repeatedly displayed a normal intellect, affect, behavior, and memory.  (*Id*. at PageID.54).  She cited Dr. Menendes' observations of a normal thought process and normal concentrational and intellectual abilities.  (*Id*.).  She cited Seaver's treating observation that Plaintiff was able to drive.  (*Id*.).  Standing alone, Plaintiff's ability to drive undermines his claim that he cannot perform simple, unskilled work.

Further, the record evidence does not support the conclusion that Plaintiff required the use of drowsiness-inducing pain medication, much less that he took such medication on a regular basis.  Plaintiff repeatedly asked for but was denied opioid medication.  (*Id*. at PageID.610, 616).  Seaver's January 2020 opinion does not state that Plaintiff experienced medication side effects.  (*Id*. at PageID.531).  The imaging studies showing unremarkable results also stand at odds with his claim that

he required the regular use opioid pain medication.  Moreover, while Plaintiff

alleged drowsiness at the beginning of the administrative hearing, he was able to

provide testimony and ended the hearing with a cogent statement of why he believed

he was entitled to benefits.  (*Id*. at PageID.84).  The record shows that although

Plaintiff claimed medication-induced fatigue during a physical therapy session, the

physical therapist observed that he was "not very invested" in the session and

elsewhere noted that Plaintiff put forth minimal effort when not alleging medication

side effects.  (*Id*. at PageID.582, 584, 586, 588).  The ALJ noted that Plaintiff

continued to drive, shop over the phone, and handle his own financial matters.  (*Id*.

at PageID.49).  The RFC for "simple, routine, and repetitive tasks with few, if any,

workplace changes" reflects a generous reading of the concentrational limitations

actually supported by the record.  (*Id*. at PageID.49).

Because the ALJ's rejection of Plaintiff's alleged degree of functional

limitation due to medication side effects is supported by the record and well

explained, it is entitled to deference of this Court. *See Cruse v. Comm'r of Soc. Sec.*,

502 F.3d 532, 542 (6th Cir. 2007) (an ALJ's assessment of claimant's allegations

entitled to "great weight"); *see also Anderson v. Bowen*, 868 F.2d 921, 927 (7th Cir.

1989) (*citing Imani v. Heckler*, 797 F.2d 508, 512 (7th Cir. 1986)) (ALJ's "credibility

determination must stand unless 'patently wrong in view of the cold record'").

Finally, Plaintiff makes a two-sentence argument that the ALJ ought to have

adopted the 2011 administrative finding that he would be off task at least 25 percent

of the workday due to physical impairments (ECF No. 12, PageID.677). However, the Appeals Council acknowledged the 2011 "off task" finding but noted that "new and material evidence," including normal imaging studies, observations of a steady gait, and Plaintiff's admission on one occasion that he was able to walk five to ten blocks undermined the earlier finding.[2]  (ECF No. 8, PageID.32).  Because the Appeals Council finding is supported by the records for the relevant period as well as my own review of the record, a remand on this basis is not warranted.

Because the ALJ's finding that Plaintiff was not disabled is overwhelmingly supported by the record and adequately explained, the administrative determination should remain undisturbed.

### 3.  Conclusion

For these reasons, I recommend **DENYING** Plaintiff's motion for summary judgment, (ECF No. 12), and **GRANTING** the Commissioner's motion (ECF No. 14).

---

[2]Acquiescence Ruling ("AR") 98-4(6), directs that in the absence of new and material evidence postdating an earlier decision under the same Title, the later fact finder must adopt the previous RFC. AR 98-4(6) (codifying *Drummond*, *supra*, 126 F.3d 837 (6th Cir. 1997)).  However, because evidence created during the period relative to this application supported the less restrictive 2020 RFC, the ALJ was not bound by the previous findings.  *See Earley v. Comm'r of Soc. Sec.*, 893 F.3d 929, 933-34 (6th Cir. 2018) (ALJ not bound by previous determination where the newer evidence created during the newer period supports a change in RFC).

### III. **REVIEW**

Pursuant to Rule 72(b)(2) of the Federal Rules of Civil Procedure, "[w]ithin 14 days after being served with a copy of the recommended disposition, a party may serve and file specific written objections to the proposed findings and recommendations. A party may respond to another party's objections within 14 days after being served with a copy." Fed. R. Civ. P. 72(b)(2); *see also* 28 U.S.C. § 636(b)(1). Failure to file specific objections constitutes a waiver of any further right of appeal. *Thomas v. Arn*, 474 U.S. 140 (1985); *Howard v. Sec'y of Health & Human Servs.*, 932 F.2d 505 (6th Cir. 1991); *United States v. Walters*, 638 F.2d 947 (6th Cir. 1981). The parties are advised that making some objections, but failing to raise others, will not preserve all the objections a party may have to this Report and Recommendation. *Willis v. Sec'y of Health & Human Servs.*, 931 F.2d 390, 401 (6th Cir. 1991); *Dakroub v. Detroit Fed'n of Teachers Local 231*, 829 F.2d 1370, 1373 (6th Cir. 1987). Pursuant to E.D. Mich. LR 72.1(d)(2), a copy of any objections is to be served upon this magistrate judge.

Any objections must be labeled as "Objection No. 1," "Objection No. 2," etc. Any objection must recite precisely the provision of this Report and Recommendation to which it pertains. Not later than 14 days after service of an objection, the opposing party may file a concise response proportionate to the objections in length and complexity. Fed. R. Civ. P. 72(b)(2); E.D. Mich. LR 72.1(d). The response must specifically address each issue raised in the objections, in the

same order, and labeled as "Response to Objection No. 1," "Response to Objection No. 2," etc.  If the Court determines that any objections are without merit, it may rule without awaiting the response.

Date: August 29, 2022                    S/ PATRICIA T. MORRIS
                                         Patricia T. Morris
                                         United States Magistrate Judge